

**Signed and Filed: September 2, 2025**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 20-30238 HLB |
| | ) |
| MARIA KRISTUL, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| ELLA TKACH and EDUARD MUZICHENKO, | ) |
| | ) Adv. Proc. No. 20-3130 HLB |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MARIA KRISTUL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM DECISION AFTER TRIAL

This proceeding came before the court on August 12, 2025 for trial. Ms. Svetlana Rishina appeared for Plaintiffs Ella Tkach and Eduard Muzichenko; Mr. Matthew Metzger appeared for Defendant/Debtor Maria Kristul. The court heard testimony from Mr. Muzichenko and Ms. Tkach; Ms. Kristul refused to appear at trial.

For the reasons set forth below, the court hereby finds and concludes that the debt owed by Ms. Kristul to Ms. Tkach and Mr.

Muzichenko is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A)[1] and 523(a)(6) and that such nondischargeable debt totals **$232,180.32** as of the date of trial.

Before explaining its reasoning, the court must commend and express its sincere appreciation for Mr. Metzger's hard work and commitment to his client. Despite Ms. Kristul's unexplained refusal to appear at trial, Mr. Metzger showed up and did his best, in an admirable display of professionalism and dedication. The result here has nothing to do with any failing by Mr. Metzger.

## I. Jurisdiction

This proceeding involves causes of action arising under §§ 523(a)(2)(A) and (a)(6), and the parties have consented to this court's subject matter jurisdiction.[2] Accordingly, this action constitutes one in which this court may issue final orders and judgment.[3]

---

[1] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code (the "Bankruptcy Code").

[2] Dkt. 27 (Second Amended Complaint), ¶ 6; Dkt. 31 (Answer to Second Amended Complaint), ¶ 6.

[3] 28 U.S.C. § 1334(b); 28 U.S.C. §§ 157(a), (b)(1), and (b)(2)(I; General Order No. 24 of the United States District Court for the Northern District of California; see also In re Mcharo, 2020 WL 118589, *2 (B.A.P. 9th Cir. Jan. 9, 2020) (acknowledging bankruptcy court's subject matter jurisdiction over proceedings asserting claims under section 523); Wellness Int'l Network Ltd. v. Sharif, 575 U.S. 665, 686 (2015) (holding that "Article III permits bankruptcy courts to finally decide [statutorily core but constitutionally non-core] claims submitted to them by consent" whether express or implied).

## II.  Findings of Fact

According to Mr. Muzichenko's testimony, he met Maria Kristul in Ukraine in the 1960's at Odessa University, where Mr. Muzichenko was a professor of engineering.  Mr. Muzichenko emigrated to the United States in 1979, and later reconnected with Ms. Kristul and her (now deceased) spouse, Mr. Joseph Kristul, who had also moved to the United States.  As Mr. Muzichenko explains it, he and Ms. Tkach were friendly with the Kristuls as members of the local Ukrainian community, but not close friends.

In 2005 or 2006, and at the Kristuls' request, Mr. Muzichenko and Ms. Tkach began discussing the possibility of investing in the Kristuls' real estate investment company, which the parties called "TFN" or "TN Financial" during trial.  Mr. Muzichenko and Ms. Tkach understood that the Kristuls were in business together, but that Maria Kristul was the President of TFN and in charge of that company.  Ms. Kristul bragged about her and Joseph Kristul's success.  They promised to repay any loans with profits from their successful businesses in Israel, as demonstrated by charts presented to Mr. Muzichenko and Ms. Tkach in the Kristuls' offices.

Although Mr. Muzichenko and Ms. Tkach are very well educated, they do not profess to be financial experts.  They have never loaned money to anyone other than the Kristuls, and the money they lent to them represented their life savings.  They trusted the Kristuls as members of the close-knit Ukrainian community.

Case: 20-03130   Doc# 84   Filed: 09/02/25   Entered: 09/02/25 19:13:44   Page 3 of 25

Ultimately, Mr. Muzichenko and Ms. Tkach loaned the Kristuls more than $400,000. During trial, Mr. Muzichenko and Ms. Tkach repeatedly referred to their Exhibit 23 as evidence of the loans they extended to the Kristuls. Ms. Kristul did not dispute this loan history, so the court accepts it for purposes of this decision.

In February 2006, Mr. Muzichenko and Ms. Tkach lent $200,000 to Joseph and Maria Kristul in two installments of $100,000.[4] The Original Loan was secured by a deed of trust encumbering real property at 83-85 Albion Street, San Francisco, CA ("Albion").[5] The Albion deed of trust was recorded March 28, 2006, and was second in priority.[6] Mr. Muzichenko and Ms. Tkach testified that they would not have extended the Original Loan without collateral to secure it.

Very shortly after the Albion deed of trust was recorded, the Kristuls approached Mr. Muzichenko and Ms. Tkach and represented that they wanted to refinance the debt secured by Albion.[7] The Kristuls asked Mr. Muzichenko and Ms. Tkach to release or reconvey their deed of trust and accept a replacement deed of trust upon completion of the refinancing transaction.[8] The Kristuls promised that the replacement deed of trust would

---

[4] Plaintiffs' Ex. 23, p. 9 (CM/ECF pagination). The court will refer to this as the "Original Loan".

[5] Id. (Ex. F).

[6] Id.

[7] Id.

[8] Id.

have the same priority as the original deed of trust.[9]  Based on
their trust in the Kristuls, Mr. Muzichenko and Ms. Tkach
executed a reconveyance of the Albion deed of trust, which the
Kristuls recorded.[10]  According to Plaintiffs' Ex. 23, the
Kristuls never provided a replacement deed of trust.[11]  Both Mr.
Muzichenko and Ms. Tkach testified that the Kristuls eventually
provided a replacement deed of trust, but once recorded, the
replacement deed of trust was fifth or sixth in priority of liens
on Albion, not second, as the Kristuls promised.  Because Mr.
Muzichenko and Ms. Tkach eventually received proceeds from the
sale of Albion through foreclosure, the court finds that the
Kristuls must have provided a replacement deed of trust,
consistent with Plaintiffs' testimony.

     In January 2007, Mr. Muzichenko and Ms. Tkach lent Joseph
Kristul $15,000,[12] which he promised to repay with 10% interest
no later than February 13, 2007.[13]  Joseph Kristul was unable to
timely repay this loan and requested numerous extensions of the
maturity date.  The last extended maturity date was September 15,
2008.[14]  Prior to June 18, 2009, Joseph Kristul made no payments
on account of Loan No. 4.[15]

---

[9] Id.

[10] Id.

[11] Id.

[12] Id. (Ex. D).

[13] Id. at p. 8 (CM/ECF pagination).

[14] Consistent with Plaintiffs' Ex. 23, the court will refer to this loan as
"Loan No. 4".

[15] Plaintiffs' Ex. 23, p. 8 (CM/ECF pagination).

In February 2007, Mr. Muzichenko and Ms. Tkach lent TN Financial $15,000.[16] TN Financial agreed to repay this loan with 10% interest no later than March 20, 2007. TN Financial did not repay this loan when due, and requested several extensions of its maturity date. The last extended maturity date expired September 15, 2008.[17] Prior to June 18, 2009, TN Financial made no payments on account of Loan No. 5.[18]

On August 12, 2007, Mr. Muzichenko and Ms. Tkach lent Joseph and Maria Kristul $100,000.[19] The promissory note for this loan reflects an interest rate of 20% and sets forth a maturity date of January 26, 2008.[20] Following Loan No. 3's maturity, the Kristuls made 4 payments, each in the amount of $10,000, on the following dates: February 27, 2008; February 28, 2008; March 8, 2008; and June 10, 2008.[21] Between June 10, 2008 and June 18, 2009, the Kristuls made no further payments on Loan No. 3.[22]

On January 27, 2008, Eduard Muzichenko lent Joseph Kristul $50,000.[23] Although the promissory note evidencing Loan No. 2

--------

[16] Plaintiffs' Ex. 23 (Ex. E).

[17] Consistent with Plaintiffs' Ex. 23, the court will refer to this loan as "Loan No. 5".

[18] Plaintiffs' Ex. 23, p. 9 (CM/ECF pagination).

[19] Id. (Ex. C). Consistent with Plaintiffs' Ex. 23, the court will refer to this loan as "Loan No. 3".

[20] Id.

[21] Id. at p. 7 (CM/ECF pagination).

[22] Id.

[23] Id. (Ex. B). Consistent with Plaintiffs' Ex. 23, the court will refer to this loan as "Loan No. 2".

Case: 20-03130   Doc# 84   Filed: 09/02/25   Entered: 09/02/25 19:13:44   Page 6 of 25

reflected an interest rate of 15%, Mr. Muzichenko and Joseph Kristul agreed upon origination to reduce the interest rate to 10%.[24]  Loan No. 2 matured on July 27, 2008.[25]  Between January 27, 2008 and July 23, 2008, Joseph Kristul made two payments, each in the amount of $1,250, on Loan No. 2.[26]  Between July 23, 2008 and June 18, 2009, Joseph Kristul made no further payments on Loan No. 2.[27]

On January 23, 2008, Mr. Muzichenko lent $50,000 to Joseph Kristul.[28]  Although the promissory note evidencing Loan No. 1 reflected an interest rate of 15%, Mr. Muzichenko and Mr. Kristul agreed upon origination to reduce the interest rate to 10%.[29] Loan No. 1 matured on April 23, 2008.[30]  Between January 23 – July 23, 2008, Mr. Kristul made two payments, each in the amount of $1,250, on Loan No. 1.[31]  On April 23, 2008, Mr. Kristul tendered to Mr. Muzichenko a check in the amount of $50,000, but this check was dishonored by Mr. Kristul's bank due to

---

[24] Id. at p. 5 (CM/ECF pagination).

[25] Id. (Ex. B).

[26] Id. at p. 6 (CM/ECF pagination).

[27] Id.

[28] Id. (Ex. A).  Consistent with Plaintiffs' Ex. 23, the court will refer to this loan as "Loan No. 1".

[29] Id. at p. 4 (CM/ECF pagination).

[30] Id. (Ex. A).

[31] Id. at p. 5 (CM/ECF pagination).

insufficient funds.[32]  Between July 23, 2008 and June 18, 2009, Mr. Kristul made no further payments on Loan No. 1.[33]

On June 18, 2009, Mr. Muzichenko and Ms. Tkach sued Joseph and Maria Kristul in San Francisco Superior Court.[34]  They demanded repayment of the loans, as well as damages for fraud and breach of fiduciary duty.  On August 23, 2010, the Kristuls, Mr. Muzichenko, Ms. Tkach, and their respective counsel executed and filed a Settlement Agreement and Stipulation for Entry of Judgment.[35]

In the Settlement Agreement, the Kristuls acknowledged their liability for the repayment of Loan Nos. 1-5, and agreed that the total amount due on those loans as of October 21, 2009 was $234,939.13.[36]  The Kristuls also acknowledged their liability for the Original Loan and authenticated its promissory note.[37]

As to the Original Loan, the parties stipulated and agreed that, as of March 6, 2007, the Original Loan bore interest at 10% and that the Kristuls made several payments totaling $58,500 between March 6, 2007 – April 6, 2008.[38]  The parties agreed

---

[32] Id.

[33] Id.

[34] Plaintiffs' Ex. 23 (First Amended Complaint filed in Tkach v. Kristul, Case No. CGC-09-487494 (the "State Court Action")).

[35] Plaintiffs' Ex. 24 (the "Settlement Agreement").

[36] Id. at p. 2 (CM/ECF pagination).

[37] Id. at p. 2 (CM/ECF pagination) and Ex. A.

[38] Id.

that, as of October 21, 2009, the principal and interest due on the Original Loan totaled $184,540.40.[39]

The Kristuls agreed to entry of a judgment against them in the amount of $334,939.15, which included the amounts due on all loans other than the Original Loan, plus punitive damages of $100,000.[40] Above and beyond the $334,939.15, the judgment would include attorneys' fees totaling $30,000 and an additional sum of $16,500.[41] The final amount totaled $381,439.15 (the "Judgment"), and would bear interest at 10% per annum but, as long as the Kristuls made payments as required by the Settlement Agreement, Mr. Muzichenko and Ms. Tkach agreed not to collect any interest on the Judgment.[42] Although the Settlement Agreement authorized them to do so, Mr. Muzichenko and Ms. Tkach never entered the Judgment against the Kristuls.

The "Payment Schedule" set forth in the Settlement Agreement was complicated.[43] It included monthly payments and periodic, large, lump sum payments in amounts that varied depending on the timing of the lump sum payment. If the Kristuls failed to make any of the settlement payments on time or in full, Mr. Muzichenko and Ms. Tkach were required to provide the Kristuls with written notice of default, after which the Kristuls would have 10 days to cure their default. If the Kristuls failed to timely cure a

---

[39] Id. at p. 3 (CM/ECF pagination).

[40] Id. at p.4 (CM/ECF pagination).

[41] Id.

[42] Id.

[43] Id. at pp. 5-6 (CM/ECF pagination).

default, Mr. Muzichenko and Ms. Tkach could immediately enforce all available remedies, without further notice.

The Settlement Agreement contained the following provision pertaining to "Bankruptcy":

> The Kristuls, and each of them, hereby agree that should either or both of them file a petition in bankruptcy or an involuntary petition in bankruptcy is filed against one or both of them prior to the payment in full of all of the payments called for in the Payment Schedule or elsewhere in this Agreement, or at such time that some portion of these payments could be deemed to have been preferential by the bankruptcy court and be required to be returned by the Plaintiffs to the bankruptcy estate, then and in any such event, the statute of limitations on each of the claims set forth in Plaintiffs' Sixth and Seventh Causes of Action in their First Amended Complaint filed herein on June 18, 2009, which causes of action seek the recovery of damages from the Defendants which Plaintiffs claim they suffered as a direct result of the Defendants' alleged fraud and deceit practiced upon the Plaintiffs and which claims are to be dismissed without prejudice pursuant to the present Agreement, shall be deemed to have been tolled from the date of the filing of the First Amended Complaint in this Action through a date ten days after the last date on which Plaintiffs may file a claim or complaint for nondischargeability in the bankruptcy case of the Defendants or either of them.[44]

The Kristuls also expressly waived the statute of limitations applicable to the Original Loan and Albion deed of trust,[45] and agreed that Mr. Muzichenko's and Ms. Tkach's causes of action for breach of fiduciary duty and fraud in connection with the Original Loan and Albion deed of trust would not merge into the

---

[44] Id. at pp. 7-8 (CM/ECF pagination).

[45] Id. at p. 9 (CM/ECF pagination).

Judgment.[46]  Apparently based on these clauses, Ms. Kristul does not argue that the claims asserted by Mr. Muzichenko and Ms. Tkach in this adversary proceeding are barred by any statute of limitation.

The Settlement Agreement provided:  "All payments made by the Defendants [according to the Payment Schedule] shall be applied first to the payment of principal and accrued interest on the [Original Loan] until all principal and interest on [the Original Loan] have been paid in full, and thereafter against the Judgment."[47]  The Kristuls made some payments under the Settlement Agreement,[48] but did not fully comply with its Payment Schedule and many of the checks they tendered as payment bounced.[49]

After the Kristuls defaulted on their obligations under the Settlement Agreement, they begged Mr. Muzichenko and Ms. Tkach not to enter the Judgment, explaining that it would hurt their business in Israel.  The parties then agreed to amend the Settlement Agreement and signed a document to that effect.[50]

The Amendment restructured the Payment Schedule so that any payments made by the Kristuls would apply first to the Judgment and not to the Original Loan secured by the Albion deed of

---

[46] Id. at p. 8 (CM/ECF pagination).

[47] Id. at p. 6 (CM/ECF pagination).

[48] Plaintiffs' Ex. 27.

[49] Defendant's Exs. G, H, I, and J.

[50] Plaintiffs' Ex. 25 (the "Amendment").

trust.[51]  The Amendment also provided for payment of funds in an unspecified amount to Mr. Muzichenko and Ms. Tkach out of the proceeds of a foreclosure sale of Albion.[52]

After application of these funds, the parties promised to "use their best and good faith efforts to negotiate a payment schedule for reducing" the remaining balance due – which the parties agreed would exist – to zero.[53]  If the parties were unable to reach agreement as to a revised payment schedule by October 1, 2014, Mr. Muzichenko and Ms. Tkach would be free to collect the remaining amount due.[54]  All sums remaining due to Mr. Muzichenko and Ms. Tkach would bear interest at 10% per annum.[55]  The court received no evidence that the parties ever agreed to a revised payment schedule.

At some point, Albion was sold through a foreclosure sale. The entity that conducted the foreclosure sale, Golden West Foreclosure Service, Inc., commenced an interpleader action in San Francisco Superior Court.[56]  The Interpleader was resolved by Stipulation, which provided for a payment to Mr. Muzichenko in the amount of $238,728.62.[57]  Mr. Muzichenko and Ms. Tkach admit

---

[51] Id.

[52] Id.

[53] Id.

[54] Id.

[55] Id.

[56] Plaintiffs' Ex. 26.  Golden West Foreclosure Service, Inc. v. GE Capital Information Technology Solutions, Inc., et al., Case No. CGC 14-542267 (the "Interpleader").

[57] Id.

they received this payment.  As of trial in this action, however, they maintain that Ms. Kristul still owes them $232,180.32, an amount the parties do not dispute bears interest at 10% per annum.[58]

Before moving to the merits, the court must identify the relevant debt because doing so will narrow the focus of its legal analysis.  According to the Settlement Agreement, only Mr. Muzichenko's and Ms. Tkach's sixth and seventh causes of action in the State Court Action were tolled by the Bankruptcy clause and not merged into the Judgment.  These causes of action dealt solely with the Kristuls' fraud in connection with the Original Loan and specifically, the fraudulent representations and promises they made in convincing Mr. Muzichenko and Ms. Tkach to release and reconvey the Albion deed of trust.  Mr. Muzichenko's and Ms. Tkach's sixth and seventh causes of action in the State Court Action had nothing to do with Loan Nos. 1-5, which were represented in the Judgment.

According to the Settlement Agreement, any payments made by the Kristuls would first be applied to the Original Loan, and then to amounts due on the Judgment.  The Amendment changed that, providing that the Judgment would be paid first and then the Original Loan.  This means that the payments made by the Kristuls pursuant to the Settlement Agreement, which totaled $134,250,[59] and the proceeds from the Interpleader, which totaled $238,728.62, for a grand total of $372,978.62 (the "Payments"),

---

[58] Plaintiffs' Ex. 27.

[59] Plaintiffs' Ex. 27.

should be credited toward the Judgment, rather than the Original Loan. The Judgment totaled $381,439.15, so the Payments did not quite satisfy the Judgment, and it appears that none of the Original Loan has been repaid.

Based on this conclusion, the court makes two observations. First, given the provisions of the Settlement Agreement and the Amendment, only the sixth and seventh causes of action asserted in the State Court Action survive. Any causes of action based on Loan Nos. 1-5 – those that were the subject of the Judgment – are now stale under applicable law.[60] So, collection of any amount remaining owed on account of the Judgment is barred by the relevant statute of limitations and possibly by the doctrine of merger.

Second, as of trial, Mr. Muzichenko and Ms. Tkach assert that Ms. Kristul still owes them $232,180.32. As previously explained, the court believes the entirety of this sum should be attributed to the Original Loan. The Settlement Agreement liquidated the amount of principal and interest due on the Original Loan at $184,540.40 as of October 21, 2009 and represented that this amount would continue to accrue interest at 10% per annum.

If the Settlement Agreement is correct, the amount currently demanded by Mr. Muzichenko and Ms. Tkach is too low. But Ms. Kristul did not dispute it, and Mr. Muzichenko and Ms. Tkach

---

[60] Cal. Code Civ. Proc. § 337 (4 year statute of limitations); see also In re Klauck, 484 B.R. 338, 342 (Bankr. N.D. Ill. 2012) (where a statute of limitations expires pre-petition, the creditor/plaintiff has no debt that can be declared nondischargeable).

adamantly stood by their calculation during trial.  The court will not correct their math.  And again, if the court has correctly interpreted and applied the payment allocation provisions of the Settlement Agreement and Amendment, the entirety of this sum is owed on account of the Original Loan.

This means that the Original Loan is the relevant debt here, and it is the representations made by Ms. Kristul and her husband in convincing Mr. Muzichenko and Ms. Tkach to release and reconvey the Albion deed of trust that are relevant to this action.

**III. Analysis**

**A.    § 523(a)(2)(A)**

§ 523(a)(2) "excepts from discharge debts arising from various forms of fraud.  Subparagraph (A) bars discharge of debts arising from 'false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition'."[61]  "The Ninth Circuit has consistently held that a creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A)."[62]

These elements include:

**(a)** A misrepresentation, fraudulent omission or deceptive conduct by the debtor;

**(b)** The debtor must know of the falsity or deceptiveness of her statement or conduct;

**(c)** The debtor must intend to deceive the creditor;

---

[61] Lamar Archer & Cofrin LLP v. Appling, 584 U.S. 709, 715 (2018).

[62] In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).

**(d)** Justifiable reliance by the creditor on the debtor's statement or conduct; **and**

**(e)** Damage to the creditor proximately caused by their reliance on the debtor's statement or conduct.[63] The creditor must prove the existence of all of these elements by a preponderance of the evidence.[64] Exceptions to discharge must be narrowly construed in favor of the debtor/defendant.[65]

**(1) Misrepresentation, Fraudulent Omission, or Deceptive Conduct by the Debtor**

Mr. Muzichenko and Ms. Tkach testified that, when they made the Original Loan, it was secured by a second in priority deed of trust on Albion. Approximately 3 months later – in May 2006 – the Kristuls told Mr. Muzichenko and Ms. Tkach that they wanted to refinance the debt secured by Albion, and that to do so, they needed Mr. Muzichenko and Ms. Tkach to temporarily release and reconvey their lien. The Kristuls promised that Mr. Muzichenko's and Ms. Tkach's reconveyed deed of trust would be replaced with a new one of equal priority. Mr. Muzichenko and Ms. Tkach complied, signing the necessary documents on or about May 17, 2006.

The Kristuls never kept their promises. It is not clear when Mr. Muzichenko and Ms. Tkach received a replacement deed of trust. According to their Exhibit 23, they had not received it as of June 18, 2009. Eventually, Mr. Muzichenko and Ms. Tkach

---

[63] In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996).

[64] Grogan v. Garner, 498 U.S. 279, 290 (1991).

[65] In re Higashi, 553 B.R. 153, 158 (Bankr. D. Haw. 2016).

received a deed of trust that was fifth or sixth in priority on Albion.

The court has little trouble finding that all of the Kristuls' promises were false.  The Kristuls were real estate professionals and their business involved real estate investing. From this, the court infers that they knew how to arrange a refinancing.  The court also infers that the Kristuls conned Mr. Muzichenko and Ms. Tkach into releasing their second priority deed of trust to fraudulently eliminate some of the debt encumbering Albion to make the refinance possible.  The court finds and concludes that the representations made by the Kristuls to convince to release their lien on Albion were fraudulent and deceptive, and that the Kristuls never intended to provide Mr. Muzichenko and Ms. Kristul with a new deed of trust of equal priority.

In her trial brief,[66] Ms. Kristul suggests, but does not clearly argue, that it might not be appropriate to attribute to her fraudulent misrepresentations made by Joseph Kristul.  The court rejects this argument.

Mr. Muzichenko and Ms. Tkach firmly attributed most of the lies to Ms. Kristul, and consistently testified that she was the one in charge.  Ms. Kristul did not even attempt to refute this. Mr. Muzichenko and Ms. Tkach also established that the Kristuls were in business together.  Given that, it is appropriate to impute Mr. Kristul's fraud to Ms. Kristul and vice versa.[67]

---

[66] Dkt. 74.

[67] Bartenwerfer v. Buckley, 598 U.S. 69, 79-80 (2023).

**(2) Defendant's Knowledge of the Falsity of Her Representations**

Under § 523(a)(2)(A), the plaintiff must prove that the defendant/debtor possessed actual knowledge of the falsity of her representations or that she was recklessly indifferent as to the truth.[68] The court has little trouble concluding that Ms. Kristul knew her promises and representations to Mr. Muzichenko and Ms. Tkach in connection with the release and reconveyance of their deed of trust on Albion were false.

Ms. Kristul did not dispute that she was an experienced real estate investor and that she did not hesitate to brag about her expertise to Mr. Muzichenko and Ms. Tkach. Based on Ms. Kristul's experience, the court infers that she solidly understood how refinancing transactions work, and that the release and reconveyance of Mr. Muzichenko's and Ms. Tkach's lien would not be necessary unless the Kristuls intended to misrepresent the amount of debt encumbering Albion.

The court infers from Mr. Muzichenko and Ms. Tkach's testimony that the Kristuls intended to fraudulently convince them to release and reconvey their Albion deed of trust and that they never intended to replace it with one of equal priority, as that would have been impossible. It is possible the Kristuls never intended to provide a replacement deed of trust at all, although it appears they eventually did. When provided, that replacement deed of trust was far lower in priority than the original. The court finds and concludes that Ms. Kristul knew

---

[68] <u>In re Grabau</u>, 151 B.R. 227, 234 (N.D. Cal. 1993) (citations omitted).

her representations and promises to Mr. Muzichenko and Ms. Tkach in connection with the Albion deed of trust were false when she made them.

### (3)  Intent to Deceive

To find the existence of intent to defraud or implied bad faith, the court must examine the totality of the circumstances.[69]  "Since a debtor will rarely admit to his fraudulent intentions, the creditor must . . . establish the subject intent of the debtor through circumstantial evidence."[70] A strong economic incentive to deceive can be a consideration when finding intent to defraud.[71]  Reckless disregard for the truth of a representation also establishes the existence of an intentionally deceptive representation or omission.[72]

In her trial brief, Ms. Kristul argued that Mr. Muzichenko and Ms. Tkach could not prove that she intended to defraud them because she made payments.  This argument overlooks the fact that the relevant debt is the Original Loan and the relevant misrepresentations are those that relate to the release and reconveyance of the original deed of trust securing the Original Loan.

At the time they made the Original Loan and cooperated with the Kristuls' scheme to "refinance" the debt secured by Albion, no payments appear to have been made on the Original Loan, as it

---

[69] In re Hashemi, 104 F.3d 1122, 1125-26 (9th Cir. 1997).

[70] Eashai, 87 F.3d at 1090.

[71] In re Locke, 205 B.R. 592, 597 (B.A.P. 9th Cir. 1996).

[72] In re Anastas, 94 F.3d 1280, 1286 (9th Cir. 1996); In re Kong, 239 B.R. 815, 826 (B.A.P. 9th Cir. 1999).

originated in February 2006, and the original deed of trust was recorded in March 2006 and released and reconveyed in May 2006. The fact that she made payments years later on account of the Judgment does not insulate Ms. Kristul from a finding that she intended to defraud Mr. Muzichenko and Ms. Tkach in connection with the Original Loan and the Albion deed of trust.

Ms. Kristul made no effort whatsoever to defend herself with respect to the false promises she made in connection with those transactions. Given that, and given Ms. Kristul's knowledge and experience as a professional real estate investor, the court has no trouble concluding that Ms. Kristul knew those representations were false when made.

### (4) Justifiable Reliance

"§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance."[73] "Under the justifiable reliance standard, the creditor may rely on a misrepresentation even if a reasonable investigation would have uncovered the fraud. But the creditor may not succeed in a [§] 523(a)(2)(A) action if the creditor had notice of the fraud. The inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made."[74]

At the time they made the Original Loan, Mr. Muzichenko and Ms. Tkach had known the Kristuls for forty years. They trusted in the Kristuls' experience and success as real estate investors, about which the Kristuls constantly bragged. They also trusted

---

[73] Field v. Mans, 516 U.S. 59, 74-75 (1995).

[74] Higashi, 553 B.R. at 159.

Case: 20-03130   Doc# 84   Filed: 09/02/25   Entered: 09/02/25 19:13:44   Page 20 of 25

them as members of their close-knit Ukrainian community.  Mr. Muzichenko and Ms. Tkach were trained as engineers – not as professional real estate investors – they knew what they did not know and they trusted people with whom they had a lengthy personal history and who appeared to have relevant professional knowledge and experience.  That is not only justifiable, but reasonable.

### (5) Damages Proximately Caused by Reliance

Mr. Muzichenko and Ms. Tkach repeatedly testified that they never would have extended the Original Loan without collateral to secure it.  The Kristuls lied to convince them to release and reconvey their original deed of trust, falsely promising to replace it with one of equal priority, which never happened. Instead, Mr. Muzichenko's and Ms. Tkach's replacement lien wound up in fifth or sixth position.  And based on the parties' Settlement Agreement and Amendment, they have agreed that none of the payments made by the Kristuls, whether voluntarily or involuntarily, should count toward the Original Loan.

Mr. Muzichenko and Ms. Tkach demand damages totaling $232,180.32 as of August 12, 2025, plus interest at 10% per annum.  And they have proven that they incurred these damages as a direct result of Ms. Kristul's false promises.  Ms. Kristul did not contest the amount of Mr. Muzichenko's and Ms. Tkach's damages, or that they were incurred based on their reliance on her misrepresentations.

**B.    § 523(a)(6)**

"A discharge under [§] 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."[75]  The plaintiff must prove by a preponderance of the evidence[76] that the defendant's conduct was both willful and malicious in order to prevail.[77]

**(1)  Willfulness**

Willfulness requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[78]  Willfulness can be proven where there exists a "subjective motive to inflict injury" or a subjective belief "that injury is substantially certain to result" from one's conduct.[79]  A bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injurious action.[80]

The Kristuls falsely told Mr. Muzichenko and Ms. Tkach that they had to release and reconvey the deed of trust securing the Original Loan in order for the Kristuls to refinance the debt secured by Albion.  And they falsely promised that they would replace the original deed of trust with one of equal priority,

---

[75] § 523(a)(6); see also In re Ormsby, 591 F.3d 1199, 1206 (9th Cir. 2010).

[76] Grogan, 498 U.S. at 290.

[77] In re Barboza, 545 F.3d 702, 706 (9th Cir. 2008) (the "willful" requirement is separate and distinct from the "malicious" requirement under § 523(a)(6)).

[78] Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

[79] Ormsby, 591 F.3d at 1206 (citation omitted).

[80] In re Su, 290 F.3d 1140, 1146 n. 6 (9th Cir. 2002).

something that was likely impossible.  The Kristuls' experience as real estate investors permits the court to conclude that they knew and understood *and intended* the harm that was substantially certain to arise from their lies:  the debt they owed to Mr. Muzichenko and Ms. Tkach would be unsecured, even if temporarily, and moved further down in priority if ever secured again.  This constitutes the kind of willful act required under § 523(a)(6).

**(2) Maliciousness**

Malicious injury "involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."[81]  Malice may be implied from the wrongful nature of the act itself,[82] and does not require a showing of biblical malice, i.e., personal hatred, spite, or ill-will.[83]

As the court has already explained and concluded, Ms. Kristul intentionally lied to Mr. Muzichenko and Ms. Tkach in convincing them to release and reconvey the deed of trust securing the Original Loan and falsely promised to replace that deed of trust with one of equal priority.  Ms. Kristul no doubt knew that these lies would cause financial harm to Mr. Muzichenko and Ms. Tkach, and Ms. Kristul has offered no excuse for her misconduct.  Accordingly, the court finds and concludes that Mr.

---

[81] Ormsby, 591 F.3d at 1207 (citing In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001)).

[82] In re Thiara, 285 B.R. 420, 434 (B.A.P. 9th Cir. 2002) (citation omitted).

[83] Id. at 434, n. 15 (citations omitted).

Muzichenko and Ms. Tkach has proved that Ms. Kristul's conduct was malicious as required by § 523(a)(6).

**IV. Conclusion**

Mr. Muzichenko and Ms. Tkach have proven by a preponderance of the evidence that their debt totaling **$232,180.32** is nondischargeable under §§ 523(a)(2)(A) and (a)(6). The court will enter a separate judgment in their favor against Debtor/Defendant Maria Kristul.

**\*\*END OF MEMORANDUM DECISION\*\***

## Court Service List

Maria Kristul
270 Santa Clara Avenue
San Francisco, CA 94127